**RECORD NO. 13-1888**

IN THE
UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

JUDY L. MOON, individually; JUDY L. MOON,
Executor of the Estate of Leslie W. Moon,

*Plaintiffs-Appellants,*

v.

BWX TECHNOLOGIES, INCORPORATED;
McDERMOTT INTERNATIONAL, INCORPORATED;
THE BABCOCK & WILCOX COMPANY;
BABCOCK & WILCOX POWER GENERATION
GROUP, INCORPORATED

*Defendants-Appellees.*

_____

On appeal from the United States District Court
for the Western District of Virginia,
Lynchburg Division
_____

**BRIEF OF APPELLEES**

Kevin P. Oddo
Joseph M. Rainsbury
LECLAIRRYAN
1800 Wells Fargo Tower
Suite 1200
Roanoke, Virginia 24006
Telephone: (540) 510-3055
Facsimile: (540) 510-3050
joseph.rainsbury@leclairryan.com
*Counsel for Appellees*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __13-1888__    Caption: __Judy Moon v. BWX Technologies, Incorporated__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__BWX Technologies, Inc.__
(name of party/amicus)

_____

who is _____Appellee_____, makes the following disclosure:
(appellant/appellee/amicus)

1. Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2. Does party/amicus have any parent corporations?  ☑ YES ☐ NO
   If yes, identify all parent corporations, including grandparent and great-grandparent corporations:
   Babcock & Wilcox Investment Company
   The Babcock & Wilcox Company

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO
   If yes, identify all such owners:

- 1 -

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?  ☐YES ☑NO

   If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO

   If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding?  ☐YES ☑NO

   If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ Joseph M. Rainsbury            Date: ____7/25/2013____

Counsel for: Appellees

## CERTIFICATE OF SERVICE
****************************

I certify that on ____July 25, 2013____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

/s/ Joseph M. Rainsbury            ____7/25/2013____
(signature)                              (date)

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. <u>13-1888</u>        Caption: <u>Judy Moon v. BWX Technologies, Incorporated</u>

Pursuant to FRAP 26.1 and Local Rule 26.1,

<u>Babcock & Wilcox Power Generation Group, Inc.</u>
(name of party/amicus)

_____

who is _____<u>Appellee</u>_____, makes the following disclosure:
        (appellant/appellee/amicus)

1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?                              ☑ YES ☐ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:
      Babcock & Wilcox Investment Company
      Babcock & Wilcox Commercial Power, Inc.
      The Babcock & Wilcox Company

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                                    ☐ YES ☑ NO
      If yes, identify all such owners:

- 1 -

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?  ☐ YES ☑ NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐ YES ☑ NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐ YES ☑ NO
    If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ Joseph M. Rainsbury          Date: _____7/25/2013_____

Counsel for: Appellees

## CERTIFICATE OF SERVICE
****************************

I certify that on _____July 25, 2013_____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

/s/ Joseph M. Rainsbury          _____7/25/2013_____
       (signature)                         (date)

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __13-1888__    Caption: __Judy Moon v. BWX Technologies, Incorporated__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__The Babcock & Wilcox Company__
(name of party/amicus)

_____

who is _____Appellee_____, makes the following disclosure:
(appellant/appellee/amicus)

1.  Is party/amicus a publicly held corporation or other publicly held entity? ☑ YES ☐ NO

2.  Does party/amicus have any parent corporations?  ☐ YES ☑ NO
    If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO
    If yes, identify all such owners:

- 1 -

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
    If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ Joseph M. Rainsbury                    Date: _____ 7/25/2013 _____

Counsel for: Appellees

# CERTIFICATE OF SERVICE

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

I certify that on _____ July 25, 2013 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

/s/ Joseph M. Rainsbury                         7/25/2013
      (signature)                                   (date)

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. 13-1888    Caption: Judy Moon v. BWX Technologies, Incorporated

Pursuant to FRAP 26.1 and Local Rule 26.1,

McDermott International, Inc.
(name of party/amicus)


who is          Appellee          , makes the following disclosure:
    (appellant/appellee/amicus)


1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☑ YES ☐ NO


2.    Does party/amicus have any parent corporations?                    ☐ YES ☑ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:


3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                    ☐ YES ☑ NO
      If yes, identify all such owners:


- 1 -

4.      Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐ YES ☑ NO
If yes, identify entity and nature of interest:

5.      Is party a trade association? (amici curiae do not complete this question)    ☐ YES ☑ NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.      Does this case arise out of a bankruptcy proceeding?    ☐ YES ☑ NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ Joseph M. Rainsbury       Date: 7/25/2013

Counsel for: Appellees

## CERTIFICATE OF SERVICE
****************************

I certify that on ___July 25, 2013___ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

/s/ Joseph M. Rainsbury                      7/25/2013
    (signature)                                  (date)

# CONTENTS

Table of Authorities ................................................................. iii

Issues Presented for Review ...................................................... 1

Introduction ............................................................................ 1

Statement of the Case ............................................................. 3

Statement of Facts .................................................................. 6

Summary of the Argument ....................................................... 9

Argument ............................................................................... 11

    I.    **The District Court properly granted Defendants' 12(b)(6) motion.** ........................................... 11

        A.   Standard of Review ........................................................ 11

        B.   The District Court properly held that Plaintiff failed to state a claim for breach of fiduciary duty. ............................................................. 12

            1.   Defendants were not "named fiduciaries" under the MetLife Plan. ................. 13

            2.   Defendants were not de facto fiduciaries because they did not exercise any discretion with respect to the MetLife Plan. ................................. 15

            3.   Plaintiff's arguments fail to establish fiduciary status. .................................. 22

        C.   The Trial Court correctly found that Plaintiff did not state a claim for estoppel under 29 U.S.C. § 1132(a)(3). ....................................... 28

        D.   The Supreme Court's recent *McCutchen* decision provides an alternate basis for affirming the District Court's decision to dismiss the Amended Complaint. ................................. 32

II.    **The Trial Court did not abuse its discretion by not allowing Plaintiff to file her Second Amended Complaint.** ........................................................ **38**

    A.    Standard of Review ........................................................ 38

    B.    Amendment to add claims for reformation and surcharge would have been futile because Defendants were not fiduciaries. ................... 38

**Conclusion** ........................................................ **41**

**Certificate of Compliance With Rule 32(A)(7)** ................................ **43**

**Certificate of Service** ........................................................ **44**

# TABLE OF AUTHORITIES

**Cases**

*Adams v. The Brink's Co.*, 420 F. Supp. 2d 523 (W.D. Va. 2006) .......................................................................... 12

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................... 12

*Beck v. PACE Int'l Union*, 551 U.S. 96 (2007) ............................. 15

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) .................... 12

*Cigna Corporation v. Amara*, --- U.S. ---, 131 S. Ct. 1866 (2011) .................................................................. passim

*Coleman v. Nationwide Life Ins. Co.*, 969 F.2d 54 (4th Cir.1992) ........................................................... 12, 16, 17

*Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73 (1995) .......... 34

*Estate of Weeks v. Advance Stores Co., Inc.*, 99 F. App'x 470 (4th Cir. 2004) ....................................... 19, 20, 21, 22

*GE Inv. Private Placement Partners II v. Parker*, 247 F.3d 543 (4th Cir. 2001) ................................................. 38

*Hamilton v. Carell*, 243 F.3d 992 (6th Cir. 2001) ........................ 16

*Healthtek Solutions, Inc. v. Fortis Benefits Ins. Co.*, 274 F. Supp. 2d 767 (E.D. Va. 2003) ...................................... 15

*Hillis v. Heineman*, 626 F.3d 1014 (9th Cir. 2010) ....................... 39

*Katyle v. Penn Nat. Gaming, Inc.*, 637 F.3d 462 (4th Cir. 2011) ................................................................... 40

*Kauthar SDN BHD v. Sternberg,* 149 F.3d 659 (7th Cir. 1998) ................................................................... 39

*Martin v. PNC Fin. Servs. Grp., Inc.*, 5:11-CV-00138-RLV, 2012 WL 1802509 (W.D.N.C. May 17, 2012) ..................... 24

*McCorkle v. Bank of Am. Corp.*, 688 F.3d 164 (4th Cir. 2012) ...... 32

*McCravy v. Metropolitan Life Insurance Company*, 690 F.3d 176 (4th Cir. 2012) ......................................... passim

*Pegram v. Herdrich*, 530 U.S. 211 (2000) ......................... 12, 17, 25

*Pohl v. National Benefits Consultants, Inc.*, 956 F.2d 126 (7th Cir. 1993) ...........................................................................17

*Trigon Ins. Co. v. Columbia Naples Capital, LLC*, 235 F. Supp. 2d 495 (E.D. Va. 2002).......................................................16

*U.S. ex rel. Nathan v. Takeda Pharm. N. Am., Inc.*, 707 F.3d 451 (4th Cir. 2013) ................................................................40

*United Rentals, Inc. v. Angell*, 592 F.3d 525 (4th Cir. 2010).........31

*United States v. Hatchett,* 245 F.3d 625 (7th Cir. 2001)...............39

*US Airline Pilots Ass'n v. Awappa, LLC*, 615 F.3d 312 (4th Cir. 2010) ....................................................................38

*US Airways, Inc. v. McCutchen*, --- U.S. ---, 133 S.Ct. 1537 (2013) ..................................................................... passim

*Varity Corp. v. Howe*, 516 U.S. 489 (1996) .........................17, 26, 27

*Vitol, S.A. v. Primerose Shipping Co. Ltd.*, 708 F.3d 527 (4th Cir. 2013) ....................................................................11

*Weeks v. Western Auto Supply Co.*, CIV.A. 7:02CV00724, 2003 WL 21510822 (W.D. Va. June 25, 2003) ...........................19

*Wilmington Shipping Co. v. New England Life Ins. Co.*, 496 F.3d 326 (4th Cir. 2007)....................................................16

**Statutes**

29 U.S.C. § 1002(21)(A) ...............................................15, 16, 18, 22

29 U.S.C. § 1104(a)(1)(D)................................................................34

29 U.S.C. § 1132(a)(1)(B)............................................................2, 4

29 U.S.C. § 1132(a)(3)...........................................................passim

**Regulations**

29 C.F.R. § 2509.75–8 (D–2)..............................................18, 19, 22

**Other Authorities**

5 Am. Jur. 2d *Appellate Review*, § 775 ..........................................39

## ISSUES PRESENTED FOR REVIEW

1.    Does an employer become an ERISA fiduciary merely by performing administrative tasks such as (1) advising employees about their rights under a plan, and (2) accepting employees' premium payments?

2.    Can a party use equitable doctrines to vary the plain terms of an ERISA plan?

3.    Does a district court abuse its discretion by denying leave to amend an ERISA equitable-relief claim where the proposed amended complaint fails to establish the defendants' fiduciary status?

## INTRODUCTION

In this ERISA action, Plaintiff seeks to recover non-existent life-insurance benefits from her deceased husband's former employer. Decedent had been on long-term disability for nearly a year before his death. When we went on long-term disability, he became ineligible for group life-insurance benefits through his employer's policy with Metropolitan Life Insurance Company (the "MetLife Plan" or "Plan"). Several weeks after he went on long-term disability, however, Defendants sent him a "confirmation of benefits" form. This form (a correction of an earlier confirmation form) showed the 2006 benefits that Decedent had chosen *before* he went on long-term disability. And it indicated his selection of $200,000 in life-insurance benefits—benefits

1

for which he no longer was eligible.  Plaintiff claims that she and her
husband relied on this form as an indication of ongoing life-insurance
coverage, that they continued to make premium payments for life-
insurance benefits, and that Defendants accepted those payments
without informing Decedent that he no longer was eligible for insurance
under the MetLife Plan.

During the first appeal in this case, this Court held that Plaintiff's
claim under 29 U.S.C. § 1132(a)(1)(B)—i.e., "to recover benefits due to
him under the terms of his plan"—failed because the plain terms of the
plan barred coverage.  This Court remanded, however, so that the Trial
Court could reconsider its ruling on Plaintiff's claim for "other
appropriate equitable relief" under 29 U.S.C. § 1132(a)(3).  On remand,
the District Court held that Plaintiff failed to state a claim for equitable
relief under ERISA because the alleged facts showed that none of the
Defendants acted in a fiduciary capacity.  For the same reason, it
denied Plaintiff's request for leave to amend.

On appeal, Plaintiff concedes that her case rises or falls on
whether she has properly alleged facts showing that Defendants acted
in a fiduciary capacity.  And she concedes that fiduciary status is

evaluated with respect to the conduct at issue.  Here, the allegedly wrongful conduct was Defendants' (1) acceptance of "premium" payments (2) without notifying Decedent of the cessation of his life-insurance benefits.  Thus, the appeal hinges on whether those alleged actions and omissions were fiduciary in character.

They were not.  Neither involved the exercise of any discretion.  So under ERISA's definition of "fiduciary"—as elaborated by Department of Labor regulations and authority from this Court—neither of them is a fiduciary act that could ground a claim for "other appropriate equitable relief" under 29 U.S.C.§ 1132(a)(3).  Ministerial acts and omissions such as accepting payments and not informing a former employee of lack of coverage do not transform an employer into an ERISA fiduciary.  Thus, Plaintiff has no claim under 29 U.S.C.§ 1132(a)(3).

This Court should affirm.

## STATEMENT OF THE CASE

In her Amended Complaint, Plaintiff seeks to recover the $200,000 MetLife coverage amount, asserting claims for breach of contract, estoppel, and breach of fiduciary duty.  (Joint Appendix ("JA")

49-58.)  Defendants moved to dismiss, noting that the plain language of the MetLife Plan barred coverage and that estoppel principles could not vary the unambiguous terms of the MetLife Plan.  (JA 7; District Court Docket Entry ("D.E.") ##53-54.)  The District Court granted Defendants' Motion. (JA 8, D.E. ##63-54.).  Plaintiff appealed that decision to this Court.  (*See* Record No. 11-1750.)

In the initial appeal in this case, this Court upheld the District Court's dismissal of Plaintiff's 29 U.S.C. § 1132(a)(1)(B) claim (i.e., the contract claim under the MetLife Plan).[1]  (JA 89.)  But it vacated the District Court's ruling on Plaintiff's 29 U.S.C. § 1132(a)(3) claims (i.e., for estoppel and breach of fiduciary duty arguments).  (JA 91-92.)  It remanded so that the District Court could "address anew Appellant's claims for equitable estoppel and breach of fiduciary duty in light of [*Cigna Corporation v.*] *Amara* [ --- U.S. ---, 131 S. Ct. 1866 (2011),] and *McCravy II* [i.e., *McCravy v. Metropolitan Life Insurance Company*, 690 F.3d 176 (4th Cir. 2012)]."  (JA 91.)

---

[1] This Court affirmed the District Court's holding that it had subject-matter jurisdiction.  (JA 87.)

4

On remand, the District Court again dismissed the Amended Complaint, though on different grounds.  (JA 203.)  Regardless of whether claims of equitable estoppel and breach of fiduciary duty could vary the terms of an ERISA plan, the District Court held Plaintiff could not assert such claims in the present case because *none of the Defendants was a fiduciary of the MetLife Plan*, either actual or "de facto."  (JA 195, 199, 201.)  It observed that a person is an ERISA fiduciary only to the extent that he or she engages in a discretionary act vis-à-vis the plan.  (JA 196.)  And it noted that the alleged wrongdoing in this case—i.e., misinforming Mr. Moon about coverage and accepting premium payments without notifying him that he no longer was covered—did not involve discretionary acts.  (JA 196-99.)  Accordingly, the District Court concluded that the defendants were not plan fiduciaries.  (JA 199.)  Because Plaintiff's estoppel and breach-of-fiduciary-duty claims both hinged on fiduciary status, the District Court dismissed the Amended Complaint.  (JA 200-02.)

The District Court also denied Plaintiff's motion for leave to amend.  (JA 203.)  In her proposed Second Amended Complaint, Plaintiff sought to add claims for "reformation" and "surcharge."  (JA

119-20.)  The District Court held that granting leave to amend would be futile, as the facts alleged in the Second Amended Complaint—which were identical to those alleged in the First Amended Complaint—did not establish entitlement to those forms of relief.  (JA 194-95, 202.)  The reformation claim failed because Plaintiff did not sufficiently allege fraudulent conduct.  (JA 193-94.)  And both the reformation claim and the surcharge claim failed because none of the Defendants was a plan fiduciary.  (JA 202.)

This appeal followed.

## STATEMENT OF FACTS

Plaintiff Judy Moon ("Plaintiff") is the widow of Leslie Moon ("Mr. Moon" or "Decedent") and is the executor of his estate.  (JA 50.)  Mr. Moon was an employee of BWX Technologies, Inc. ("BWXT"), a subsidiary of McDermott International, Inc. ("McDermott International").  (JA 50.)  BWXT offered Mr. Moon certain benefits in connection with his employment, including life insurance offered by MetLife.  (*Id.* at ¶ 13, 28.)  For 2006, Mr. Moon elected $200,000 in life-insurance benefits.  (JA 45.)  BWXT and McDermott verified this

selection in a "Confirmation Statement" issued on November 29, 2005 (the "November 2005 Confirmation Statement"). (JA 45.)

Mr. Moon had a serious heart condition. (Aff. of Judy Moon, D.E. #21, Ex. 2.)[2] When BWXT/McDermott prepared the November 2005 Confirmation Statement, he was on short-term disability and had applied for long-term disability. (*Id.*; JA 50.) He was approved for long-term disability shortly thereafter, on December 1, 2005. (JA 51.) At that point, Mr. Moon no longer was an active employee of BWXT. (JA 51.) The fact that Mr. Moon ceased active employment meant that he no longer was eligible for benefits under the MetLife Plan. (JA 38.)[3] He could, however, elect to convert his group policy to an individual policy—i.e., one in which he would make payments directly to MetLife.

---

[2] A copy of Ms. Moon's affidavit is also in the Joint Appendix from the first appeal of this matter, Record No. 11-1750, at pages 37-42.

[3] This reference is to the Summary Plan Description. The full MetLife Plan appears in the District Court record at Docket Entry #54, Ex. 3. It also appears in the Joint Appendix from the first appeal, Record No. 11-1750, at 213-49. Page 14 of the MetLife Plan states that benefits end when employment ends: "All of your benefits will end on the last day of the calendar month in which your employment ends. Your employment ends when you cease Active Work as an Employee." Page 4 states that "'Active Work' means that you are performing all of the material duties of your job with the Employer where those duties are normally carried out."

(JA 37.)  Mr. Moon did not convert his group policy to an individual policy.  (JA 46-47.)

Although the MetLife Plan no longer covered him, Mr. Moon was sent a confirmation statement dated January 13, 2006 (the "January 2006 Confirmation Statement").  As with the November 2005 Confirmation Statement, the January 2006 Confirmation Statement reflected that he had selected $200,000 in Employee Life Insurance coverage for the 2006 calendar year.[4]  (JA 25.)  It did not reflect his recent change in status to long-term disability.[5]  (*Id.*)  Plaintiff alleges that, relying upon this document, she and Mr. Moon made life-insurance premium payments to BWXT/McDermott throughout 2006, which she claims BWXT/McDermott accepted without comment.  (JA 51-53.)

---

[4] This document differed from the November 2005 Confirmation Statement in a single particular: it increased the employee contribution for long-term disability benefits by $2.52, resulting in a total annual employee contribution of $3269.76.  *Compare* JA 25 with JA 45.  Relevant here, there was no change to the "Annual Employee Cost" for Employee Life Insurance.  It remained $804.00.

[5] Indeed, it states that Mr. Moon was not disabled, with an "N" under the Disabled column at the bottom.  (JA 25.)

Mr. Moon died on November 18, 2006. (JA 50.) After he died, Defendants informed Plaintiff—through her counsel—that because her husband was not an active employee at the time of his death, he was not covered by the MetLife group plan. (JA 46-47.) Defendants also told her that it had no record of Mr. Moon's having created an individual policy with MetLife. (JA 46-47.) Thus, they said, there was no policy on which to submit a claim. (JA 46-47.)

## SUMMARY OF THE ARGUMENT

In her appeal, Plaintiff challenges both the District Court's decision to dismiss her First Amended Complaint and its denial of leave leave for her to file a Second Amended Complaint. Plaintiff's arguments on both points fail because she cannot establish that any of the Defendants was a fiduciary under the MetLife Plan.

Plaintiff bases her entire case on Defendants' alleged wrongdoing in: (1) confirming Mr. Moon's selection of life-insurance benefits at a time when Mr. Moon was, in fact, ineligible for those benefits, and (2) accepting Mr. Moon's life-insurance premium payments without notifying him of his ineligibility for such coverage. But as the District Court properly held, notifying employees of their benefits selections and

9

accepting employees' premium payments are *not* discretionary actions; they are ministerial and administrative in nature. Accordingly, they are not fiduciary actions. Because none of the Defendants acted in a fidicuary capacity with respect to any of the actions giving rise to this suit, none of them was an ERISA fiduciary.

Plaintiff's inability to establish fiduciary status dooms her case. The claims in the First Amended Complaint for breach of fiduciary and estoppel both depend on her being able to show that Defendants were fiduciaries. And the claims in the proposed Second Amended Complaint for reformation and surcharge likewise hinge on fiduciary status. Because Plaintiff did not—and could not—allege facts showing that any of the Defendants was a fiduciary, the District Court properly dismissed the First Amended Complaint and denied Plaintiff leave to file a Second Amended Complaint.

In disposing of the case on the issue of fiduciary status, the District Court did not need to address whether *Amara* and *McCravy II* enabled Plaintiff to use estoppel principles to vary the terms of the MetLife Plan. On appeal, however, Plaintiff continues to rely on those cases. That reliance is misplaced because it fails to address the District

10

Court's actual reasons for dismissing the First Amended Complaint. But it is doubly misplaced in light of the Supreme Court's recent decision in *US Airways, Inc. v. McCutchen*, --- U.S. ---, ---, 133 S.Ct. 1537, 1548 (2013). Although dicta in *Amara* had suggested otherwise, the Supreme Court clearly held in *McCutchen* that equitable principles cannot override the plain terms of an ERISA plan. In the present case, Plaintiff improperly seeks to use equitable principles to override the express provision in the MetLife Plan that terminates life-insurance coverage upon the cessation of active employment. Although the District Court did not reach the issue on remand, this Court can affirm on this alternate basis.

## ARGUMENT

### I.    The District Court properly granted Defendants' 12(b)(6) motion.

#### A.    Standard of Review

This Court "review[s] de novo the grant of a Rule 12(b)(6) motion." *Vitol, S.A. v. Primerose Shipping Co. Ltd.*, 708 F.3d 527, 543 (4th Cir. 2013). To survive a 12(b)(6) motion, a plaintiff must show that her claim is "plausible," not just conceivable or speculative. *Id.* A claim is plausible where it recites concrete facts—not just conclusory

allegations—that satisfy the elements of a claim.  *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007)).

### B.   The District Court properly held that Plaintiff failed to state a claim for breach of fiduciary duty.

It is undisputed that a claim for breach of fiduciary duty can be brought only against a plan fiduciary.[6]  It follows that "[b]efore one can conclude that a fiduciary duty has been violated, it must be established that the party charged with the breach meets the statutory definition of 'fiduciary.'" *Adams v. The Brink's Co.*, 420 F. Supp. 2d 523, 551 (W.D. Va. 2006) *aff'd*, 261 F. App'x 583 (4th Cir. 2008) (quoting *Coleman v. Nationwide Life Ins. Co.*, 969 F.2d 54, 60-61 (4th Cir.1992)).  *See also Pegram v. Herdrich*, 530 U.S. 211, 226 (2000) ("[T]he threshold question is . . . whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint.").

---

[6] In her brief, Plaintiff "concedes that an ERISA suit should be filed against a Plan and/or an ERISA fiduciary."  (Br. at 21.)

In the present case, the District Court dismissed Plaintiff's fiduciary-duty claim because none of the Defendants was a Plan fiduciary. (JA 199.) This was proper. Defendants were not "named fiduciaries" and they did not act as "de facto fiduciaries" in the events giving rise to this suit.

    1.    Defendants were not "named fiduciaries" under the MetLife Plan.

Take, first, the question of whom the Plan explicitly names as fiduciaries. The Summary Plan Description ("SPD") for the MetLife Plan identifies the life-insurance carrier as MetLife, the claims administrator as MetLife, and the Plan sponsor and administrator as McDermott Incorporated. (JA 42.) *None of these entities has been named as a defendant in this action*.[7]

---

[7] Plaintiff named McDermott *International*, Incorporated, not McDermott Incorporated, as a defendant. Defendants have told Plaintiff, repeatedly, that McDermott International, Incorporated is a separate corporate entity from McDermott Incorporated. *See* D.E. #7, at 7 n.4 (Dec. 11, 2009); D.E. #43, at 9 n.6 (Dec. 3, 2010); D.E. #54, at 10 n.9 (Mar. 16, 2011); D.E. #73, at 4 (Feb. 12, 2013). But Plaintiff has never sought leave to add McDermott Incorporated as a Defendant. Nor has she alleged any facts that would justify piercing the corporate veil between these two corporations.

Adding McDermott Incorporated as a defendant would not have altered the result in the District Court, however. As shown in the following

*(note continued on following page . . . )*

On page seven of her brief, however, Plaintiff represents that "BWXT"—the term she uses to denote the Defendants collectively—"was the Plan Sponsor and the Plan Administrator." (Br. at 7.) Elsewhere, she states that "BWXT was the named Plan Administrator," (Br. at 11), that "Moon's benefit offer came from the Plan Administrator, BWXT," (Br. at 18), that "BWXT was both the employer (or former employer) and the Plan Administrator," (Br. at 22), and that "BWXT acted as plan administrator." (*Id.*)

These representations are simply not true. (JA 42.) Plaintiff has not cited, and cannot cite, anything in the record showing that *any* of the Defendants was a named fiduciary under the MetLife Plan. Nor can she cite anything showing that the MetLife Plan otherwise authorized Defendants to manage or administer it. The SPD shows that the only entities with such authority were MetLife and McDermott Incorporated, neither of whom is a party to this action.[8] Thus, the only

---

*(. . . note continued from previous page)*
section, none of the acts alleged in this case was fiduciary in character. So none can support Plaintiff's claims for estoppel and breach of fiduciary duty. *See infra* Section I.B.2.

[8] *See supra*, note 7.

14

way that any of the Defendants could qualify as fiduciaries is if they acted as "de facto fiduciaries."

> 2.  Defendants were not de facto fiduciaries because they did not exercise any discretion with respect to the MetLife Plan.

Defendants did not act as de facto fiduciaries.  As an initial matter, the law is clear that an employer is not, *ipso facto*, a plan fiduciary.  *Beck v. PACE Int'l Union*, 551 U.S. 96, 101 (2007) (noting that ERISA does not create fiduciary duty for employer who merely sponsors a plan, but does not administer it).  *See also Healthtek Solutions, Inc. v. Fortis Benefits Ins. Co.*, 274 F. Supp. 2d 767, 775 (E.D. Va. 2003) ("The mere fact that an employer is a sponsor does not mean that the employer is also a fiduciary.").

Instead, ERISA defines "fiduciary" functionally.  A person is a fiduciary only "to the extent" that that person acts in a fiduciary capacity.  29 U.S.C. § 1002(21)(A).[9]  As this Court has noted, "[t]he

---

[9] The text of the definition is:

> [A] person is a fiduciary with respect to a plan to the extent
>
> (i)  he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any

*(note continued on following page . . . )*

definition is couched in terms of functional control and authority over the plan, thus necessitating that courts 'examine the conduct at issue when determining whether an individual is an ERISA fiduciary.'" *Wilmington Shipping Co. v. New England Life Ins. Co.*, 496 F.3d 326, 343 (4th Cir. 2007) (quoting *Hamilton v. Carell*, 243 F.3d 992, 998 (6th Cir. 2001)).

This evaluation takes place "with respect to the particular activity in issue." *Coleman*, 969 F.2d at 61. *See also Trigon Ins. Co. v. Columbia Naples Capital, LLC*, 235 F. Supp. 2d 495, 503 (E.D. Va. 2002) ("[A] person will only be judged *by fiduciary standards* under a breach of fiduciary duty claim to the extent that the person was

---

*(. . . note continued from previous page)*

    authority or control respecting management or disposition of its assets,

(ii)    he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or

(iii)    he has any discretionary authority or discretionary responsibility in the administration of such plan. Such term includes any person designated under section 1105(c)(1)(B) of this title.

29 U.S.C. § 1002(21)(A).

16

performing a fiduciary function when taking the action subject to complaint.") (emphasis in original) (citing *Pegram,* 530 U.S. at 226).

Under ERISA, the key to determining whether a person acts in a fiduciary capacity is whether he or she exercises "discretion" with respect to the alleged activities:

> [T]he statute says that a "person is a fiduciary with respect to a plan," and therefore subject to ERISA fiduciary duties, "to the extent" that he or she "*exercises any discretionary authority* or *discretionary control* respecting management" of the plan, or "has any *discretionary authority or discretionary responsibility* in the administration" of the plan.

*Varity Corp. v. Howe*, 516 U.S. 489, 498 (1996) (quoting 29 U.S.C. § 1002(21)(A)) (emphasis added).  *See also Coleman*, 969 F.2d at 61 ("discretionary authority or responsibility . . . is pivotal to the statutory definition of 'fiduciary'"); *Pohl v. National Benefits Consultants, Inc.*, 956 F.2d 126, 129 (7th Cir. 1993) (Posner, J.) ("ERISA makes the existence of discretion a sine qua non of fiduciary duty.").

In the present case, Plaintiff bases her breach-of-fiduciary-duty claim on Defendants' acceptance of payments and alleged failure to notify Decedent that he no longer was eligible for life insurance benefits.  She contends that "defendants had a duty to Mr. Moon to

17

truthfully and accurately advise Mr. Moon if he was ineligible for life insurance benefits within a reasonable time after receiving monthly payments . . . ."  (Am. Compl. ¶ 34) (emphasis added).  Thus, Plaintiff can maintain a breach-of-fiduciary-duty claim only if accepting payments and advising participants about their eligibility for employee benefits are "discretionary" acts under ERISA.

They are not.  Under the Department of Labor's ERISA guidelines, persons who have no power to make decisions regarding the plan and who perform only "administrative functions" are *not* fiduciaries for purposes of 29 U.S.C. § 1002(21)(A).  29 C.F.R. § 2509.75–8 (D–2).  Among the non-fiduciary "administrative functions" that the DOL enumerates are "collection of contributions" and "advising participants of their rights and obligations under the plan":

> Q:    Are persons who have no power to make any decisions as to plan policy, interpretations, practices or procedures, but who perform the following administrative functions for an employee benefit plan, within a framework of policies, interpretations, rules, practices and procedures made by other persons, fiduciaries with respect to the plan:
>
> . . .
>
> (3)    Preparation of employee communications material;

18

. . .

(7)   *. . . [A]dvising participants of their rights and obligations under the plan*;

(8)   *Collection of contributions* and applications of contributions as provided in the plan;

(9)   Preparation of reports concerning participants' benefits . . . ?

A:   *No.*  Only persons who perform one or more of the functions described in section 3(21)(A) [29 U.S.C. § 1002(21)(A)] of the Act with respect to an employee benefit plan are fiduciaries. Therefore, a *person who performs purely ministerial functions* such as the types described above for an employee benefit plan within a framework of policies, interpretations, rules, practices and procedures made by other persons *is not a fiduciary because such person does not have discretionary authority or discretionary control respecting management of the plan, does not exercise any authority or control respecting management or disposition of the assets of the plan*, and does not render investment advice with respect to any money or other property of the plan and has no authority or responsibility to do so.

29 C.F.R. § 2509.75–8 (D–2) (emphasis added).  *See also Weeks v.*

*Western Auto Supply Co.*, CIV.A. 7:02CV00724, 2003 WL 21510822

(W.D. Va. June 25, 2003) (Wilson, J.), *aff'd sub nom. Estate of Weeks v.*

*Advance Stores Co., Inc.*, 99 F. App'x 470 (4th Cir. 2004) (stating that

"administrative acts, such as advising participants about plan benefits

19

based on the terms of the plan, do not amount to discretionary functions under ERISA.") (citing 29 C.F.R. § 2509.75-9(D-2)).

This Court's decision in *Estate of Weeks v. Advance Stores Co., Inc.* is on point. In that case, an employee left his job at an automotive-parts distribution center. 99 Fed. App'x at 472. Within a week of leaving, he learned that his childhood leukemia had recurred. *Id.* at 473. When his family contacted the employer about possible benefits, a human-resources manager told them, incorrectly, that all his benefits ceased on his last day of employment. *Id.* In fact, the former employee had the right to extend his health and life insurance, provided that he did so within 31 days after he ceased employment. Because his family was not told about this right, the former employee failed to extend his coverage. He died a few months later. His family brought an ERISA action, arguing that the human-resources manager's misrepresentation about the non-existence of coverage was a breach of fiduciary duty. The district court granted the employer's summary-judgment motion. 2003 WL 21510822, at *7.

On appeal, this Court affirmed. It first noted that a person is a fiduciary under ERISA only to the extent that his or her actions are

20

discretionary. 99 Fed App'x at 475-76. The plaintiff had argued that the manager "became an ERISA fiduciary by answering her questions about Weeks' benefits." *Id.* at 476. This Court rejected this argument, stating that "[s]uch an act is merely administrative because in performing it an employee does not exercise any discretionary authority over the manner in which the ERISA plan is managed or administered." *Id.* Addressing the plaintiff's argument that the human-resources manager should have responded to the family's inquiry differently (*e.g.*, by forwarding the query to the employer's benefits specialist), this Court said that that had no bearing on the question of fiduciary status, which hinged instead on whether she "actually exercised any discretionary authority over the management and administration of the plan in question." *Id.* at 476-77. Because the plaintiff did not and could not establish this, this Court upheld the lower court's ruling.

In the present case, as in *Weeks*, Plaintiff bases her breach-of-fiduciary duty claim on alleged misrepresentations about insurance coverage. She asserts that, upon acceptance of payments, Defendants had a duty to inform Decedent of his lack of life-insurance coverage:

> [D]efendants had a duty to Mr. Moon *to truthfully and accurately advise* Mr. Moon if he was

> ineligible for life insurance benefits within a
> reasonable time *after receiving monthly payments*
> from Mr. Moon for such benefits.

(Am. Compl. ¶ 34.)  And she claims that Defendants' failure to provide

this information was a breach of their purported fiduciary duty:

> [D]efendants . . . negligently or intentionally
> *breached the duty* they owed to Mr. Moon under
> ERISA *to advise him of his ineligibility* for life
> insurance benefits.

(Am. Compl. ¶ 36.)

Applying 29 U.S.C. § 1002(21)(A), 29 C.F.R. § 2509.75–8 (D–2),

and *Weeks* to the facts of this case, the District Court held that neither

accepting payments from a plan participant nor providing information

about an ERISA plan's coverage was a discretionary act.  (JA 197-99.)

Accordingly, it held that "Plaintiff has failed to establish Defendants'

fiduciary status with respect to the particular activities at issue in this

case," and dismissed Plaintiff's breach-of-fiduciary-duty claim.  (JA

199.)

> 3. Plaintiff's arguments fail to establish
>    fiduciary status.

On appeal, Plaintiff fails to identify any flaw in the District

Court's analysis.  Indeed, she does not even cite—let alone analyze—the

DOL regulation and the *Weeks* decision upon which the District Court

principally relied.  Instead, Plaintiff makes four separate arguments for why she thinks she has adequately established fiduciary status.  None of these arguments holds water.

**First**, Plaintiff contends that the Complaint "specifically alleged that BWXT had 'discretionary authority under ERISA to create and manage the benefit plan offered Mr. Moon and that defendants were therefore ERISA fiduciaries as to this Plan.'"  (Br. at 20) (citing 1st Am. Compl. ¶ 33, JA 118).  This argument fails because it is a conclusory assertion that relies on a legal theory that this Court already has rejected.  The "plan" referenced in ¶ 33 is *not* the MetLife Plan.  It is the individual "plan" that Plaintiff hypothesizes came into existence when BWXT sent Mr. Moon the January 2006 Confirmation statement.  Plaintiff contends that this was a "written offer to Mr. Moon" and "constituted a proposal for life insurance benefits separate from the Met Life Plan."  (*Id.* at ¶ 32.)

In its decision in the earlier appeal, however, this Court rejected this line of argument, stating that "[f]ar from indicating an independent, post-employment contract for benefits, the documents on which Appellant relies all plainly demonstrate that her claims stem

23

from nothing more than Mr. Moon's enrollment in a run-of-the-mill
employee benefit plan weeks before his retirement." (JA 88.) Thus,
Plaintiff's allegation in ¶ 33 that BWXT was a "fiduciary" hinges on the
existence of an individual benefits "plan" that this Court already has
held never existed. This non-existent plan clearly cannot establish
Defendants' fiduciary status. Instead, "Appellant's claims for an
entitlement to benefits are governed by the language of the [MetLife]
Plan." (*Id.*) And as noted above, none of the Defendants is a named
fiduciary of the MetLife Plan.

**Second**, Plaintiff contends that fiduciary status cannot be decided
on the pleadings because "a 'defendant's level of discretion is a fact-
specific inquiry frequently ill-suited for a motion to dismiss.'" (Br. at
24) (quoting *Martin v. PNC Fin. Servs. Grp., Inc.*, 5:11-CV-00138-RLV,
2012 WL 1802509, at *3 (W.D.N.C. May 17, 2012)). While it may be
true that a defendant's degree of discretion over a plan sometimes can
present a disputed question of fact, such is not the case here. Plaintiff
has not identified—and cannot identify—any facts that could alter the
District Court's analysis. Plaintiff bases her fiduciary-duty claim on
(1) the sending of the January 2006 Confirmation Statement to

24

Plaintiff, and (2) Defendants' subsequent retention of premium payments without notifying the Moons of the absence of coverage. (Br. at 22.) For the reasons stated by the District Court, these are inherently non-discretionary acts. (JA 197-99.) As a matter of law, they *cannot* ground a claim of fiduciary status. Dismissal is appropriate where, as here, the alleged facts, taken as true, show that the defendant did not act in a fiduciary capacity.

**Third**, Plaintiff contends that "BWXT completely controlled the handling of Moon's claims" and that this involved sufficient discretion to make Defendants fiduciaries. (Br. at 25.) This argument fails both legally and factually.

As a legal matter, the argument fails because Plaintiff does not base her breach-of-fiduciary-duty claim on allegations of improper claims handling; she bases it on the fact that Defendants accepted payments without warning Mr. Moon that he no longer was eligible for life-insurance benefits. As noted *supra*, page 16, courts evaluate fiduciary status only as to the conduct at issue. *See also Pegram,* 530 U.S. at 226 (noting that "[i]n every case charging breach of ERISA fiduciary duty, . . . the threshold question is . . . whether that person

25

was acting as a fiduciary (that is, was performing a fiduciary function) *when taking the action subject to complaint*") (emphasis added). Which is exactly why the District Court rejected Plaintiff's similar arguments below, stating that "Defendants alleged 'handling and denial' of Plaintiff's claim has nothing to do with their silent acceptance of Mr. Moon's payments, which is the action that Plaintiff contends constituted the breach of fiduciary duty in this case.'" (JA 200.)

As a factual matter, the argument fails because BWXT did not "handle" Ms. Moon's "claim." It simply sent her lawyer a letter stating, accurately, that because Mr. Moon had ceased active employment and failed to elect continuation coverage within the prescribed time, there was no policy on which she could make a claim.

**Fourth**, Plaintiff contends that the present case is comparable to *Varity v. Howe*, 516 U.S. 489 (1996). It is not. *Varity* was a case in which the employer lied to employees in order to induce them to transfer to a soon-to-be-defunct corporate entity.[10] It falsely told them that "your benefits are secure," knowing that they would lose their

---

[10] Unlike Defendants in the present case, the employer in *Varity* also was the administrator of the ERISA plan.

26

benefits upon the (imminent) failure of the entity to which they were transferring.  The Supreme Court held that communicating to employees about the likely future of a plan (that the employer administers) was a fiduciary act.  Thus, lying to employees about the plan's likely future was an actionable breach of fiduciary duty.  *Id.* at 515.

*Varity* is distinguishable from the present case for two reasons. First, unlike Defendants in the present case, the employer in *Varity* was the plan administrator, acting in that capacity.  Second, the misrepresentation in *Varity* was not a simple misstatement regarding who or what was covered under the plan.  It was a calculated deception concerning the future viability of the plaintiffs' benefits, aimed at getting them to act to their financial disadvantage.  The facts in *Varity* are nothing like those here.  The facts here resemble those in *Weeks*, where this Court held that a misstatement about the scope of plan benefits was not a fiduciary action.  *See supra*, at 20-21.

*        *        *

To summarize: Plaintiff's claim for breach of fiduciary duty rests on Defendants' alleged acceptance of payments without apprising

27

Decedent of his lack of coverage. No amount of argument can transmute these ministerial actions and omissions into the sort of fiduciary actions that Congress enacted 29 U.S.C. § 1132(a)(3) to govern. Thus, this Court should affirm the dismissal of plaintiff's claim for breach of fiduciary duty.

### C. The Trial Court correctly found that Plaintiff did not state a claim for estoppel under 29 U.S.C. § 1132(a)(3).

That leaves Plaintiff's estoppel claim. This claim, too, fails for lack of fiduciary status.

In its opinion, the District Court held that to state a claim for estoppel under ERISA's "other appropriate equitable relief" provision, 29 U.S.C. § 1132(a)(3), Plaintiff needed to establish an independent ground for equity jurisdiction.[11] (JA 199.) In particular, she needed to

---

[11] The relevant portion of § 1132 is as follows:

> (a) Persons empowered to bring a civil action
>
> A civil action may be brought--
>
> . . .
>
> (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the

*(note continued on following page . . .)*

show that the defendant acted in a fiduciary capacity. *See McCravy II*, 690 F.3d at 181 (holding that "remedies traditionally available in courts of equity, expressly including estoppel and surcharge, are . . . available to *plaintiffs suing fiduciaries* under Section 1132(a)(3)") (emphasis added) (citing *Amara.* 131 S. Ct. at 1880). As the District Court pointed out, the defendants in both *Amara* and *McCravy II* were plan fiduciaries. (JA 199) (citing *Amara*, 131 S. Ct. at 1869, *McCravy II*, 690 F.3d at 182-83.)

On appeal, Plaintiff acknowledges that, to establish an estoppel claim under 29 U.S.C. § 1132(a)(3), she needed to establish the existence of a fiduciary relationship. (Br. at 21.) But she claims that "BWXT"[12] was a plan fiduciary and so *McCravy II* applies. (Br. at 18.)

---

*(. . . note continued from previous page)*

> plan, or (B) to obtain other appropriate equitable
> relief (i) to redress such violations or (ii) to
> enforce any provisions of this subchapter or the
> terms of the plan;

29 U.S.C. § 1132(a)(3).

[12] Once again, Plaintiff uses the term "BWXT" generically and does not specify which Defendant she is talking about.

To support this argument she repeats arguments she makes elsewhere in her brief.

For reasons stated above, those arguments are unsound. None of the Defendants was a named fiduciary. (*See supra*, Section I.B.1.) And Plaintiff has not alleged facts showing that any of the Defendants acted in a fiduciary capacity when committing their allegedly wrongful acts. (*See supra* Section I.B.2.) Thus, the District Court properly held that Plaintiff failed to establish an estoppel claim under 29 U.S.C. § 1132(a)(3).

Plaintiff also makes what appears to be a new argument. Trying to shoehorn this case into *Amara*'s analysis of equitable remedies against trustees, she contends that by sending Mr. Moon the January 2006 Confirmation Statement and by accepting his premium payments, Defendants became "trustees" of a "trust" in Ms. Moon's favor:

> [Plaintiff] is the beneficiary of a trust arising between BWXT, as trustee, and Mr. Moon. The trust arrangement arose by virtue of BWXT's misrepresentations to Moon that he could purchase benefits in year 2006, Moon's payments to BWXT during that year for those benefits, BWXT's acceptance of the premiums and their failure to notify him month after month that he did not have the benefits for which he was paying until after his death.

30

(Br. 17.)

This "trust" theory fails for several reasons. To begin with, it was not raised in the District Court and so Plaintiff has waived it on appeal. *See, e.g.*, *United Rentals, Inc. v. Angell*, 592 F.3d 525, 534 (4th Cir. 2010) ("[W]e do not address this argument because United raised it for the first time on appeal."). In addition, the argument conflicts with this Court's holding in the earlier appeal that the January 2006 Confirmation Statement was just routine paperwork relating to "Mr. Moon's enrollment in a run-of-the-mill employee benefit plan weeks before his retirement." (JA 88.) Finally, Plaintiff fails to explain how the sending of the January 2006 Confirmation Statement and the acceptance of Mr. Moon's payments could—under Virginia law or the law of any other jurisdiction—create a trust. The argument is a legal non-sequitur, unsupported by any authority.

Thus, Plaintiff's estoppel claim fails for the same reason as her breach-of-fiduciary-duty claim—i.e., Plaintiff failed to establish that any of the Defendants stood in a fiduciary relationship vis-à-vis Mr. and Mrs. Moon. Dismissal was appropriate.

### D. The Supreme Court's recent *McCutchen* decision provides an alternate basis for affirming the District Court's decision to dismiss the Amended Complaint.

For the reasons stated above, the District Court properly dismissed the fiduciary-duty and estoppel claims because Plaintiff failed to allege facts demonstrating fiduciary status. So this Court should affirm on that ground. But this Court can affirm on the alternate basis that the relief that Plaintiff seeks is inconsistent with the plain terms of the MetLife Plan.[13] As the Supreme Court recently held in *US Airways, Inc. v. McCutchen*, 133 S.Ct. 1537, 1548 (2013), a party cannot use equitable principles to vary the plain terms of an ERISA plan.

---

[13] Unlike the original dismissal, the District Court based its dismissal on remand on Defendants' lack of fiduciary status—not on the fact that estoppel principles could not vary the plain terms of an ERISA plan. Nevertheless, this Court may affirm on the latter ground. *McCorkle v. Bank of Am. Corp.*, 688 F.3d 164, 177 (4th Cir. 2012) *cert. denied*, 133 S. Ct. 1253, 185 L. Ed. 2d 181 (U.S. 2013) ("[W]e are entitled to affirm the district court on any ground that would support the judgment in favor of the party prevailing below.").

In *McCutchen*, an employee covered by an ERISA plan was involved in a motor-vehicle accident. The plan paid for $66,866 of the employee's medical expenses. The employee later sued the other driver and recovered $110,000 in settlements. After deducting $44,000 for the lawyer's fee, this left the employee with a recovery of $66,000. The ERISA plan required the employee to reimburse the administrator if he recovered from a third party. So the administrator sued the employee under 29 U.S.C. § 1132(a)(3) to recover the $66,866 it had paid in medical expenses, asking the District Court to place a lien on the settlement proceeds. *Id.* at 1543.

The employee asserted two equitable defenses. First, he claimed that the plan's plain terms should give way to the equitable principle that an insurer may recoup no more than an insured's "double recovery." *Id.* at 1543-44. That principle, which contradicted the plan's unambiguous terms, would limit the administrator's recovery to the portion of the settlement attributable to medical expenses (as opposed to lost earnings and pain and suffering). Second, the employee asserted the equitable "common fund" doctrine, which would require the

administrator to pay its share of attorney's fees in collecting from the third party.  *Id.* at 1544.  The plan was silent on that particular issue.

The Supreme Court held that the plaintiff could *not* invoke the double-recovery doctrine because it was inconsistent with the plan's unambiguous terms.  It observed that ERISA "is built around reliance on the face of written plan documents."  *Id.* at 1548 (quoting *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 83 (1995)).  It cited ERISA's provision that "an administrator must act 'in accordance with the documents and instruments governing the plan' insofar as they accord with the statute."  *Id.* (citing 29 U.S.C. § 1104(a)(1)(D)).  And it held that the particular ERISA remedial provision at issue—29 U.S.C. § 1132(a)(3)—"countenances only such relief as will enforce '*the terms of the plan*' or the statute."  *Id.* (emphasis added by Court).  The Supreme Court concluded that allowing an equitable doctrine to trump the plan's terms would be inconsistent with ERISA's overall structure:

> The plan, in short, is at the center of ERISA.  And precluding McCutchen's equitable defenses from overriding plain contract terms helps it to remain there.

34

*Id.* Accordingly, it held that the employee could not use the equitable doctrine of double recovery to vary the plan's terms.[14]  *Id.*

The "common fund" doctrine, however, stood on a different footing. The Court held that the plan "says nothing specific about that issue." *Id.* at 1449.  And it noted that, in interpreting ERISA policies, courts can use background equitable principles to fill contractual gaps. *Id.* at 1550 ("Given that contractual gap, the common-fund doctrine provides the best indication of the parties intent.").  Thus, it was appropriate to deduct the administrator's share of attorney's fees from the reimbursement amount. *Id.*

In the present case, estopping Defendants from denying coverage would fall afoul of *McCutchen*.  Under the MetLife Plan's unambiguous terms, Mr. Moon's coverage ended when he ceased active employment. (JA 88-89.)  The only way that Plaintiff could obtain life-insurance

---

[14] In light of this holding in *McCutchen*, portions of *McCravy II* no longer appear to be good law.  In *McCravy II*, this Court—relying on *dicta* in *Amara*—held that the plaintiff *could* use equitable estoppel principles to prevent MetLife from applying unambiguous policy terms barring coverage.  690 F.3d 176 (citing *Amara*, 131 S. Ct. at 1880).  But this is inconsistent with, and must give way to, the Supreme Court's clear holding in *McCutchen* that equitable principles cannot override

*(note continued on following page . . . )*

benefits is if estoppel principles served to vary the MetLife Plan's terms. But *McCutchen* clearly holds that courts may *not* use equitable principles to vary unambiguous plan terms.  And it holds that this rule applies with particular force in claims (like the ones in the present case) brought under 29 U.S.C. § 1132(a)(3), which authorizes equitable relief only to enforce "the terms of the plan" or the statute.  The equitable relief that Plaintiff seeks in the present case would not "enforce" the terms of the plan.  It would negate them.  Thus, *McCutchen* bars Plaintiff's claims for equitable relief under 29 U.S.C. § 1132(a)(3).

In her brief, Plaintiff acknowledges *McCutchen's* central holding that "equitable principles and relief now recognized in ERISA actions cannot overcome the plain terms of an ERISA benefits plan."  (Br. at 14.)  But trying to turn a sow's ear into a silk purse, she cites the portions of *McCutchen* discussing the common-fund rule and argues that—just as the Supreme Court used the common-fund rule to fill gaps in the attorney's fees provision in *McCutchen*—this Court likewise can use equitable principles to fill gaps in the MetLife Plan.  (Br. at 14-15.)

---

*(. . . note continued from previous page)*
the clear terms of an ERISA plan.  133 S. Ct. at 1548.  Plaintiff's reliance on *Amara* and *McCravy II* is therefore unwarranted.

36

The problem with this argument is that there are no relevant gaps to fill in the MetLife Plan.  The Plan states, in no uncertain terms, that coverage ends when an employee ceases active employment.[15]  In the present case, Plaintiff wants to use equitable principles to erase that provision, not to fill gaps in it.  Under *McCutchen*, that is improper.

In her brief, however, Plaintiff attempts to re-frame the issue by saying that the MetLife Plan lacked any provisions governing "the post-employment misconduct alleged by Moon." (Br. at 15.)  It is difficult to make sense of this argument.  In the present case, the alleged misconduct is the supposed *grounds* for estopping Defendants from enforcing the contract provision—it is not the subject of that provision.  Furthermore, Plaintiff's proposed addition to cover this circumstance would not be a "gap filling" provision.  It would supplant a contract term that otherwise unambiguously ends life-insurance coverage upon cessation of active employment.  Plaintiff's requested relief thus would not "enforce . . . the terms of the plan;" it would change them.  29 U.S.C. § 1132(a)(3).  That is exactly the sort of "overriding [of] plain contract terms" that *McCutchen* forbids.

---

[15] The relevant plan language is quoted *supra*, at note 3.

37

## II. The Trial Court did not abuse its discretion by not allowing Plaintiff to file her Second Amended Complaint.

### A. Standard of Review

This Court reviews the "'district court's denial of leave to amend the complaint for an abuse of discretion.'" *US Airline Pilots Ass'n v. Awappa, LLC*, 615 F.3d 312, 320 (4th Cir. 2010) (quoting *GE Inv. Private Placement Partners II v. Parker*, 247 F.3d 543, 548 (4th Cir. 2001)).

### B. Amendment to add claims for reformation and surcharge would have been futile because Defendants were not fiduciaries.

Finally, Plaintiff appeals the District Court's decision to deny her leave to amend to add claims for "reformation" and "surcharge." The District Court denied leave to amend because Plaintiff's "requests for reformation (Count One) and surcharge (Count Two) in her proposed amendments are futile." (JA 195.) Plaintiff contends that this was error. (Br. at 26.)

As a threshold matter, however, Plaintiff has waived the argument with respect to reformation. The District Court gave two reasons for denying Plaintiff leave to add such a claim. First, it held

that Plaintiff could not seek reformation because she "failed to

sufficiently allege any type of fraudulent conduct . . . in her proposed

second amended complaint." (JA 193.) Second, it ruled that

reformation was not available because Defendants were not plan

fiduciaries. (JA 194.) Plaintiff's brief addresses only the second of those

two holdings. Where, as here, a party fails to address all of a lower

court's bases for a ruling on an issue, that party waives her appeal as to

that issue. *See United States v. Hatchett,* 245 F.3d 625, 644-45 (7th Cir.

2001) ("In situations in which there is one or more alternative holdings

on an issue, . . . failure to address one of the holdings results in a waiver

of any claim of error with respect to the court's decision on that issue.")

(quoting *Kauthar SDN BHD v. Sternberg,* 149 F.3d 659, 668 (7th Cir.

1998)).[16]

Yet even if Plaintiff had preserved all her arguments regarding

her motion for leave to amend—and she did not—her appeal on this

---

[16] *See also Hillis v. Heineman*, 626 F.3d 1014, 1019 n.1 (9th Cir. 2010)
("Because the Hillises do not challenge the alternative ground on
appeal, they have waived it . . . ."); 5 Am. Jur. 2d *Appellate Review,*
§ 775 ("[W]here a separate and independent ground from the one
appealed supports the judgment made below, and is not challenged on
appeal, the appellate court must affirm.").

issue still fails because amending the complaint would have been futile. "[A] district court may deny leave to amend if the amendment 'would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile.'" *U.S. ex rel. Nathan v. Takeda Pharm. N. Am., Inc.*, 707 F.3d 451, 461 (4th Cir. 2013) (quoting *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006)). Amendment is futile where the proposed amended complaint fails to state a claim. *Katyle v. Penn Nat. Gaming, Inc.*, 637 F.3d 462, 471 (4th Cir. 2011).

In its analysis, the District Court concluded that, in order to bring a § 1132(a)(3) claim for reformation or surcharge, Plaintiff needed to establish that Defendants were fiduciaries. (JA 194-95.) Because Plaintiff failed to allege facts showing that any of the Defendants was a plan fiduciary, the District Court held that Plaintiff could not make a viable claim for reformation or surcharge. So amendment would be futile. (*Id.*)

On appeal, Plaintiff does not dispute that she needed to show that Defendants were fiduciaries in order to establish a viable claim for reformation or surcharge. (Br. at 26.) Instead, she argues that she

made such a showing and that the District Court erred in concluding otherwise. (*Id.*) To support this argument, Plaintiff incorporates earlier sections of her brief addressing the fiduciary issue.

For the reasons stated in Sections I.B and I.C above, Plaintiff did not and cannot establish fiduciary status. None of the Defendants was a named fiduciary. And the alleged wrongdoing—accepting premium payments without notifying Decedent of his lack of coverage—did not involve the sort of discretionary action that could ground a finding of a de facto fiduciary. Thus, the District Court correctly concluded that amendment would have been futile.

## CONCLUSION

Because none of the Defendants acted in a fiduciary capacity, and because Plaintiff cannot use equitable principles to vary the terms of an ERISA plan, this Court should affirm.

41

By: /s/ Joseph M. Rainsbury
Of Counsel

Kevin P. Oddo
Joseph M. Rainsbury
LECLAIRRYAN
1800 Wells Fargo Tower
Suite 1200
Roanoke, Virginia 24006
Telephone: (540) 510-3055
Facsimile: (540) 510-3050
joseph.rainsbury@leclairryan.com

*Counsel for Appellees*

## CERTIFICATE OF COMPLIANCE WITH RULE 32(A)(7)

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 8042 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface (Century Schoolbook) using Microsoft Word 2003 in 14-point font.

    /s/ Joseph M. Rainsbury

## CERTIFICATE OF SERVICE

I certify that on November 1, 2013, the foregoing document was served on all parties or their counsel of record through the CM/ECF system.

_____/s/ Joseph M. Rainsbury_____